**In the Matter of the Application for Water Rights of: Merit Land & Cattle Company, Inc., W-17, W-18, W-19, and W-20. In the Matter of the Application for Water Rights of: Carolyn D. Baker, W-22 v. Southeastern Colorado Water Conservancy District and Division Engineer of Water Division No. 2**

(534 P.2d 618)

Decided April 21, 1975. Opinion modified and as modified rehearing denied May 12, 1975.

---

[5]Now section 18-1-901(3)(d), C.R.S. 1973.

Saunders, Snyder & Ross, P.C., Glenn G. Saunders, W. B. Tourtillott, Jr., for applicants-appellants.

James D. Geissinger, Special Assistant Attorney General, Fairfield and Woods, Charles J. Beise, for objectors-appellees.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

There is here involved the adjudication of five water wells under the Water Right Determination and Administration Act of 1969 (Sections 37-92-101 *et seq.*, C.R.S. 1973, here called the 1969 Act). The applicants proposed to use the water from the wells as follows:

"The water appropriated hereby is to be used for irrigation, domestic, industrial, recreation, fish and wildlife culture, stock water, and municipal uses both for direct use, for storage and for replenishment of evaporation losses, at the rate of flow shown in . . . the application herein so that, when in priority, the water at such rate of flow, or so much thereof as is available, will be applied directly and immediately, if the occasion permits or re-

quires, or it may be stored for later use, according to the will of the owner of the appropriation; and such storage shall be in the amount of 250 acre feet in the Dawn Dam and Reservoir or in the amount of 10,000 acre feet in the John Martin Dam and Reservoir.''

The applicants also made the following statement in their amended application:

''The date of initiation of appropriation . . . is . . . March 1, 1880 provided that the applicant does not claim and hereby waives any right to exercise this water right on a basis senior to any water right adjudicated in any general or supplemental adjudication proceeding whether completed or pending at the time of the filing of the application herein. This waiver is filed with full knowledge of a statutory provision purporting to give diverters of underground water a special privilege of dating back, which has not been accorded to other water diverters [Section 37-92-306, C.R.S. 1973], and is made deliberately in consideration of the expectation that statements of opposition heretofore filed herein on behalf of owners of decreed appropriations may and will be withdrawn because of this amendment and waiver. Whether this be considered to be a contract or an estoppel the purpose of the appropriator is to set at rest what the appropriator considers to be a legitimate concern of senior appropriators for the protection of their vested water rights and the applicant prays that the ultimate finding and decree in this matter contain a limitation or limitations appropriate to secure other appropriators with decreed and vested rights, the benefits of this amendment.''

Except as noted below, the court granted only direct use conditional decrees for the purposes specified by the applicants. Five decrees were entered simultaneously, but in most respects only one (W-17) is before us as it has been represented that the five wells ''are so similar regarding the facts, pleadings, testimony and orders entered by the Trial Court.'' This order fixed a priority date of March 2, 1965 (being the date of the permit for the well issued by the State Engineer), subject to applicants' subordination of their rights to any other rights completed or pending on November 28, 1969 (the filing date of applicants' application). Another of the five wells was awarded an absolute direct use decree. The applicants appeal from the refusal of the court to

award storage rights of 250 acre feet in Dawn Reservoir and 10,000 acre feet in Caddoa Reservoir (John Martin Reservoir). We affirm.

In August 1969, pursuant to statute (Section 37-92-302(2), C.R.S. 1973), the water judges of the state prepared forms for use in proceedings under the 1969 Act, and since that time these forms have been available in the offices of the clerks of the seven water courts of the state. Among these forms were "APPLICATION FOR UNDERGROUND WATER RIGHTS." and "APPLICATION FOR WATER STORAGE RIGHT." The applications in this case were filed in November and December 1969 and were all on the form for application for an underground water right. The form of application for a water storage right asks for a great deal of information not requested in the application for an underground water right. Perhaps some of this information may not be available or necessary to apply for and obtain a conditional storage decree, but much of it is necessary. Not only none of this information was furnished in the applications, but there was no evidence thereof.

I.

The principal issue is whether the court erred in refusing to grant storage decrees.

The water judge made the following conclusions of law:
"From the form of the 'Application for Underground Water Right,' and Amendment, with the submission of docket fee for only one water right, and the general confusion relative to anything further sought by the applicant, it is believed the court can consider only the underground water right sought. Any additional right for storage concerning which no adequate testimony was presented relative to the nature of the storage facility sought to be proved, requires a denial thereof. Had the applicant desired to establish a storage right, the form of application for such a right was available. The applicant made no use of such a form, nor did it divide its application in such a way to indicate that such special additional right of this different kind was sought, nor was a docket fee paid for the consideration of such additional right."

There is no need for us to consider the conclusion reached by the trial court that applicants cannot have a storage decree because they did not use the proper form, nor for us to comment

upon the effect of the sole docket fee paid. We simply hold that the record supports the finding that there was insufficient evidence to support a storage decree.

## II.

With our disposition of the case, we need not address ourselves as to whether an appropriator of ground water, not having specific authority to do so, has the right to store it in a federally owned reservoir, *i.e.,* John Martin Reservoir.

## III.

Here the applicants and in companion Case No. 26588 the applicants and the Colorado Water Protective and Development Association desire that we rule that, subject to all vested rights, ground water may be appropriated for surface storage and deferred application to a beneficial use; and that a conditional decree can be awarded therefor. This, of course, is going to be the fundamental question when an applicant performs those things required by law to be the basis of a storage decree. That bridge is yet to be crossed, and we care not to traverse it prematurely.

Judgment affirmed.